## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZRD GROUP, LLC, Individually and On Behalf of All Others Similarly Situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY DEMAND** |
| v. | |
| CEDAR SHAKE & SHINGLE BUREAU, a Washington nonprofit corporation; WALDUN FOREST PRODUCTS, LTD, a British Columbia corporation; ANBROOK INDUSTRIES LTD, a British Columbia Corporation; and G&R CEDAR LTD, a British Columbia corporation, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

TABLE OF CONTENTS

I.     NATURE OF THE ACTION ........................................................................................... 1

II.    JURISDICTION AND VENUE ..................................................................................... 3

III.   THE PARTIES ............................................................................................................... 5

   A. Plaintiff ....................................................................................................................... 5

   B. Defendants .................................................................................................................. 5

IV.    TRADE AND COMMERCE ......................................................................................... 6

V.     FACTUAL ALLEGATIONS ......................................................................................... 8

   A. Background on Cedar Shakes and Shingles ................................................................ 8

      1.   Cedar Shakes and Shingles ................................................................................... 8

      2.   Cedar Shakes and Shingles are Commodities ....................................................... 9

      3.   The United States Market For Cedar Shakes and Shingles Is A National Market
           Worth Billions of Dollars Annually ..................................................................... 10

      4.   The Price Of Cedar Shakes And Shingles Has Risen Steadily Since 2009 ......... 10

      5.   Inventories Of Cedar Shakes And Shingles Have Increased Substantially In Recent
           Years Compared To Manufacturing Levels, Which Suggests An Output Restriction
           By Manufacturers ................................................................................................ 12

   B. The Structure And Characteristics Of The Cedar Shakes And Shingles Market, Together
      With Other Factors, Render The Conspiracy Economically Plausible ........................ 13

      1.   The Cedar Shakes And Shingles Industry Is Highly Vertically Integrated ........... 13

      2.   The Market For Cedar Shakes And Shingles Is Characterized By Inelastic Supply
           And Demand ........................................................................................................ 13

      3.   There Are No Significant Substitutes For Cedar Shakes And Shingles ................ 14

      4.   The Cedar Shakes And Shingles Industry Has Experienced High Consolidation And
           Is Highly Concentrated ....................................................................................... 14

      5.   Defendants Had Numerous Opportunities To Collude ......................................... 14

           a.   Geographic Proximity ................................................................................... 14

           b.   Trade Associations ....................................................................................... 15

**6.**    There Are High Barriers To Entry In The Cedar Shakes And Shingles Market ........17

C.  Manufacturer Defendants Worked Through The CSSB To Fix The Price Of Cedar Shakes
And Shingles And Restrict Output ......................................................................................17

VI.    CLASS ACTION ALLEGATIONS ...............................................................................19

VII.   ANTITUST INJURY ....................................................................................................25

VIII.  VIOLATION OF SECTION 1 OF THE SHERMAN ACT.............................................29

IX.    VIOLATIONS OF STATE ANTITRUST LAWS ..........................................................30

X.     VIOLATIONS OF STATE CONSUMER PROTECTION LAWS ..................................56

XI.    CLAIM FOR UNJUST ENRICHMENT ........................................................................86

Plaintiff, ZRD Group, LLC ("Plaintiff"), brings this action on behalf of itself and on behalf of a plaintiff class consisting of all individuals and entities who purchased cedar shakes and shingles for end use and not for resale that were manufactured by a Defendant (hereinafter defined) or co-conspirator named in this complaint in the United States from no later than February 27, 2015 (further investigation and discovery may reveal an earlier date) through the present.

## I.    NATURE OF THE ACTION

1.    Cedar shakes and shingles are roofing and siding material produced from cedar logs and cut blocks. The use of cedar shakes and shingles dates back hundreds of years. A cedar shake is a rustic-looking roofing shingle that has been hand split, replicating the look of an ax or mallet cut. Shakes are rough and variable and almost always used for roofing. Conversely, cedar shingles are uniformly sawn for a consistent and even thickness and provide a uniform machine-like look. Shingles are used for both sidewalls and roofing.

2.    The Cedar Shake & Shingle Bureau ("CSSB") is a trade association serving the shake and shingle industry in the United States and Canada. CSSB owns the trademark to "Certi-Label" shakes and shingles, which include the Certi-Grade, Certi-Sawn, Certi-Split, and Certi-Ridge registered trademark labels. CSSB Certi-Labeled shakes and shingles account for an estimated 95% of the high-end cedar shake and shingles utilized in the United States product market. All CSSB members participate in and sell the vast majority of their high-end cedar shake and shingle products in the United States.

3.    The CSSB Board of Directors comprises several of the largest manufacturers of cedar shakes and shingles, including Defendant Anbrook Industries Ltd. ("Anbrook"), Defendant Waldun Forest Products Ltd. ("Waldun") and Defendant G&R Cedar Ltd. ("G&R") (collectively, "Manufacturer Defendants").

1

4.      On information and belief, at least some members of the CSSB – including Manufacturer Defendants - colluded to fix prices on cedar shake and shingles.

5.      The CSSB plays a large role in regulating the cedar shake and shingle industry in the United States and Canada. The CSSB drafted and holds the copyright to the CSSB-97 grading and packing rules, which have been almost universally incorporated into building codes throughout the United States and Canada.

6.      The CSSB has aggressively and successfully promoted its CSSB-97 grading rules and its trademarked Certi-Label shakes and shingles. Virtually all of the manufacturers of high end shakes and shingles sold and used in the United States in the past 20 years have been members of the CSSB.

7.      Membership in the CSSB trade association is necessary to effectively compete in the U.S. market for high-end shakes and shingles. CSSB members hold at least 90% of the shares of this market.

8.      The cedar shake and shingle industry has become significantly consolidated over the past two decades. Shake and shingle manufacturers now operate only in Washington, Idaho, and British Columbia.

9.      Manufacturer Defendants have a concentration of power in the CSSB, partly due to the consolidation of the shake and shingle industry, and partly due to the voting structure of the CSSB, which weighs votes based on each manufacturer member's annual shake and shingle production.

10.     In fact, through the CSSB, Manufacturer Defendants have used their voting power to terminate members from the CSSB who compete on price and who are unwilling to follow the price and product leadership of Manufacturer Defendants.

11.    Defendants' wrongful and anticompetitive actions had the intended purpose and effect of artificially fixing, raising, maintaining, and stabilizing the price of cedar shakes and shingles to Plaintiff and class members in the United States.  Indeed, 90% of all cedar shakes and shingles manufactured in Canada are exported to the United States.[1]

12.    As a result of Defendants' unlawful conduct, Plaintiff and the class paid artificially inflated prices for cedar shakes and shingles during the Class Period, *i.e.*, February 27, 2015 through the present.  Such prices exceeded the amount they would have paid for cedar shakes and shingles if the price had been determined by a competitive market.  Thus, Plaintiff and class members suffered an antitrust injury as a result of Defendants' conduct.

## II.    JURISDICTION AND VENUE

13.    Plaintiff brings this class action on behalf of all the Classes to recover actual and/or compensatory damages, double and treble damages as permitted, pre- and post-judgment interest, costs, and attorneys' fees for the injury caused by Defendants' fixing of the price of cedar shakes and shingles. Plaintiff seeks damages in excess of $5,000,000. Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

14.    Plaintiff also asserts claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seeks to obtain restitution, recover damages, and secure other relief against Defendants for violation of

---

[1] *An Economic Assessment of the Western Red Cedar Industry in British Columbia*, Christopher Gregory, Alec McBeath, and Cosmin Filipescu (2018).

those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants; and (ii) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

15.    Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d) because one or more Defendants resided or transacted business in this District, is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

16.    This Court has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of cedar shakes and shingles throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

17.    The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

18.     No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.    THE PARTIES

### A.    Plaintiff

19.     Plaintiff is a New York corporation with a principal place of business in Nassau County, New York. Plaintiff purchased cedar shakes bearing the CSSB Certi-Label for end use and not for resale during the Class Period.

### B.    Defendants

20.     Defendant Cedar Shake & Shingle Bureau  is a Washington nonprofit corporation that is the only trade association serving the shake and shingle industry in the United States and Canada. The CSSB is headquartered in Mission, British Columbia, and maintains an office in Sumas, Washington.

21.     Defendant Anbrook Industries Ltd. is a British Columbia corporation with its principal place of business in Pitt Meadows, British Columbia. Anbrook is a member of the CSSB and owns and operates a cedar shake and shingle manufacturing facility in Pitt Meadows, British Columbia.

22.     Defendant Waldun Forest Products Ltd. is a British Columbia corporation with its principal place of business in Maple Ridge, British Columbia. Waldun is a member of the CSSB and owns and operates a cedar shake and shingle manufacturer in Maple Ridge, British Columbia.

23.     Defendant G&R Cedar Ltd. is a British Columbia corporation headquartered in Abbotsford, British Columbia. During the Class Period, G&R and/or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate

5

commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

24.     "Defendant" or "Defendants" as used herein includes, in addition to those named specifically above, all of the named Defendants' predecessors, including cedar shake and shingle companies that merged with or were acquired by the named Defendants and each named Defendant's wholly-owned or controlled subsidiaries or affiliates that sold cedar shakes and shingles interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States during the Class Period.

25.     To the extent that subsidiaries and divisions within each Defendant's corporate family sold or distributed cedar shakes and shingles to direct purchasers, these subsidiaries played a material role in the conspiracy alleged in this Complaint because Defendants wished to ensure that the prices paid for such cedar shakes and shingles would not undercut the artificially raised and inflated pricing that was the aim and intended result of Defendants' coordinated and collusive behavior as alleged herein. Thus, all such entities within the corporate family were active, knowing participants in the conspiracy alleged herein, and their conduct in selling, pricing, distributing and collecting monies from Plaintiff and the members of the Plaintiff Class for cedar shakes and shingles was known to and approved by their respective corporate parent named as a Defendant in this Complaint.

IV.     **TRADE AND COMMERCE**

26.     During the Class Period, Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

27.     During the Class Period, each Manufacturer Defendant, directly or through its subsidiaries or other affiliates, sold cedar shakes and shingles in the United States in a

6

continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

28.      During the Class Period, Manufacturer Defendants and co-conspirators collectively controlled a majority of the market for cedar shakes and shingles in the United States.

29.      Cedar shakes and shingles manufactured abroad by Defendants and sold as standalone products are goods brought into the United States for sale and therefore constitute import commerce. To the extent that any cedar shakes and shingles are purchased in the United States, and do not constitute import commerce, Defendants' unlawful conduct with respect thereto, as more fully alleged herein during the Class Period, had and continues to have a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, caused antitrust injury to Plaintiff and members of the Classes in the United States.

30.      Defendants' business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

31.      By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, and allocate market shares for cedar shakes and shingles, which unreasonably restrained trade and adversely affected the market for such products.

## V.    FACTUAL ALLEGATIONS

### A.    Background on Cedar Shakes and Shingles

#### 1.    Cedar Shakes and Shingles

32.    As noted above in paragraph 1, cedar shakes are rustic looking and used in roofing, while cedar shingles are uniformly sawn for a consistent and even thickness and provide a uniform machine-like look. Shingles are used for both sidewalls and roofing.

33.    As used in this Complaint, "cedar shakes and shingles" refers to any cedar product bearing the Certi-Label of the CSSB. Those Certi-Label products include the following:



8



### 2. Cedar Shakes and Shingles are Commodities

34.    The CSSB aggressively promotes its Certi-Label. For example, the CSSB website contains a 20-page brochure explaining how to read CSSB Certi-Labels and different shake and shingle grades, which includes examples of all CSSB Certi-Labels and which warns consumers about potential use of competing labels that are not CSSB Certi-Labels.

35.    CSSB Certi-Labeled shakes and shingles are produced from cedar logs and cut blocks and installed on the roofs and exterior walls of residential dwellings and commercial buildings. CSSB-97 grading rules and Certi-Labels cover two species of cedar: western red cedar and Alaskan yellow cedar.

36.    Cedar shakes and shingles are commodity products with little or no product differentiation based on the manufacturer. In fact, to be sold as a product bearing the CSSB Certi-Label, all products must be uniform and meet the specifications required by the CSSB.

3.    **The United States Market For Cedar Shakes and Shingles Is A National Market Worth Billions of Dollars Annually**

37.    The demand for cedar shakes and shingles is driven by new residential and commercial construction and repair and remodeling. Cedar is the most popular wood siding and roofing choice, and offers advantages for insulation and durability over the more common asphalt shingle roof. Approximately USD $5.6 billion of softwood lumber imports were reported by the U.S. Commerce Department in 2017, including cedar, spruce, and Douglas fir. Cedar shakes and shingles represent a substantial portion of this commerce.

38.    On average, roofing and siding make up ten percent of the cost of a home, however, the cost of cedar shakes and shingles is more than alternatives. Installing cedar roofing shingles (for a roof size 1,400-2,100 square feet) currently costs approximately $12,800 - $19,700, depending on the type and finish options. Because shakes are a premium quality product and are also harder to install, installing cedar roofing shakes can cost up to 1.5-2 times as much as shingles. On average, installation of cedar roofing shakes costs approximately $15,200 - $24,000 (for a roof size 1,400-2,100 square feet), depending on the type and finish options.

4.    **The Price Of Cedar Shakes And Shingles Has Risen Steadily Since 2009**

39.    Since January 2009, the price of cedar shakes and shingles has risen over time, as shown by the graph below:



40.    Tariffs recently being considered for softwood lumber imports from Canada do not explain the price increase in cedar shakes and shingles, since those tariffs have not actually been implemented. While a September 2018 decision from the International Trade Administration ("ITA") suggested that cedar shakes and shingles are covered by the scope of a January 2018 tariff order, cedar shake and shingle manufacturers have formed a Shake and Shingle Alliance to challenge the ITA's decision. The Shake and Shingle Alliance filed a lawsuit challenging the ITA decision in the Court of International Trade on November 8, 2018.

Information from the International Trade Commission (ITC) currently shows cedar shakes and shingles as free of any duty or tariff.[2]

###### 5.    Inventories Of Cedar Shakes And Shingles Have Increased Substantially In Recent Years Compared To Manufacturing Levels, Which Suggests An Output Restriction By Manufacturers

41.    One indicia of anticompetitive behavior in an industry is unexplained increases in inventories of a commodity product. The chart below is a monthly comparison of the value of inventory of cedar shakes and siding to the value of cedar shakes and shingles manufactured each month. The manufacture of new cedar shakes and shingles began declining in 2009 and remained relatively low through 2016. However, beginning in 2012, the inventories of cedar shakes and shingles maintained by these manufacturers started to increase substantially. At the same time, as seen in the chart above, prices for shingles and shakes were generally increasing over this time period. In a competitive market, manufacturers would opt to sell at a lower price rather than accumulate inventory. This build-up of inventory is suggestive of anti-competitive restrictions by manufacturers of cedar shakes and shingles in order to maintain or increase prices.

---

[2] Harmonized Tariff Schedule, 2019 Basic Edition, #4418.50.00 Shingles and Shakes, https://hts.usitc.gov/?query=44185000 (last accessed February 26, 2019).



**B.** **The Structure And Characteristics Of The Cedar Shakes And Shingles Market, Together With Other Factors, Render The Conspiracy Economically Plausible**

**1.** **The Cedar Shakes And Shingles Industry Is Highly Vertically Integrated**

42.     The cedar shakes and shingles industry has become vertically integrated, particularly by the Manufacturer Defendants. For instance, Defendant Waldun notes on its website that it "has integrated the various aspects of cedar manufacturing, producing cedar lumber, shakes, and value-added rebutted and rejointed sidewall shingles.[3]

**2.** **The Market For Cedar Shakes And Shingles Is Characterized By Inelastic Supply And Demand**

43.     Consumer demand for cedar shakes and shingles is relatively unaffected by price.

---

[3] http://waldun.com/waldun/.

3.     <u>There Are No Significant Substitutes For Cedar Shakes And Shingles</u>

44.     There are no significant substitutes for cedar shakes and shingles. While there are potential substitute products—asphalt-shingle roofs, ceramic tile roofs, slate roofs, or other wood siding—the characteristics of those products lack the unique characteristics of cedar wood. Cedar shakes and shingles have a historic appearance and texture that cannot be attained with modern products, plus they also have a longer durability that offers cost savings compared to other products. Further, cedar shakes and shingles are only a small component of the overall cost of a home or building, so consumers are unlikely to substitute other products in the face of increasing prices.

4.     <u>The Cedar Shakes And Shingles Industry Has Experienced High Consolidation And Is Highly Concentrated</u>

45.     The cedar shake and shingle industry has become significantly consolidated over the past two decades, with shake and shingle manufacturers now operating only in the Pacific Northwest. There are currently 45 total manufacturers who are members of CSSB: seventeen manufacturers operating in Washington, three operating in Idaho, and twenty-five operating in British Columbia. The CSSB also contains Wholesale and Contractor members, with locations throughout the United States, Canada, and the United Kingdom. Manufacturer Defendants are three of the largest members of the CSSB.

5.     <u>Defendants Had Numerous Opportunities To Collude</u>

a.     <b>Geographic Proximity</b>

46.     The close proximity of Defendants and many manufacturer co-conspirators provided ample opportunities to meet and discuss pricing and supply of cedar shakes and shingles. Manufacturer Defendants are located in the Vancouver, British Columbia metro area. Anbrook is headquartered in Pitt Meadows, British Columbia, while Waldun is headquartered in

the neighboring city, Maple Ridge, British Columbia—approximately 16 miles (26 kilometers) east of Anbrook and G&R is headquartered in Abbotsford, British Columbia—approximately 11 miles (18 kilometers) east of Maple Ridge. Additionally, Defendant CSSB is located just outside the Vancouver metro area in Mission, British Columbia—approximately 7 miles (11 kilometers) east of Waldun. There are also seven other CSSB member manufacturers located in close proximity to Defendants, including Clearbrook Shake & Shingle Ltd., Golden Ears Shingle Ltd., Imperial Cedar Products Ltd., Pacific Coast Cedar Products, Ltd., Serpentine Cedar Ltd., Stave Lake Cedar Mills (1992) Inc., and Titan Cedar Products Ltd.

47.    There are also two geographic concentrations of CSSB manufacturer members on the Olympic peninsula in Washington. There are six CSSB member manufacturers in the headquartered and concentrated in the Hoquiam, Washington area: A&R Cedar, Inc., Best Shingle Sales, Inc., #208 Shake & Shingle/Griffiths, Inc., ACS Cedar, Inc., Alfa Red Cedar Products, and L&H Shake, Inc. Similarly, six CSSB member manufacturers are concentrated around Forks, Washington: Long Cedar, Pacific Shingle, Pleasant Lake Cedar, Premium Shingle LLC, Rainy Day Shake & Shingle Ltd., and Zoffel Logging & Milling, Inc.

### b.  Trade Associations

48.    The Manufacturer Defendants and their co-conspirators are members of the CSSB, which provided an important opportunity to meet and collude with one another.

49.    According to its website, "the Cedar Shake and Shingle Bureau® is a non-profit organization that promotes the use of Certi-label® cedar roofing and sidewall products. On June 9, 1915, at a meeting of the Trustees of the West Coast Lumber Manufacturers Association, it was agreed to establish a branch of the association to serve those members who manufactured shingles. Our influence grew, and as we survived both the Great Depression and World War II, manufacturers continued their quality commitment. In 1963 the organization merged with the

Handsplit Shake Bureau to become the Red Cedar Shingle & Handsplit Shake Bureau. Manufacturers' product lines continued to broaden and, in 1988, the members changed the organization's name to the Cedar Shake & Shingle Bureau®. In the late 1980s, mill quality control inspections were subcontracted to independent, third party quality control agencies."

50.     Manufacturer Defendants each have executives who serve on the CSSB Board of Directors. Brooke Meeker, President and CEO of Defendant Anbrook, has been a member of the CSSB Board of Directors for more than 10 years, and is the current Board Chairperson. Curtis Walker, President and CEO of Defendant Waldun, has been a member of the CSSB Board of Directors for more than 10 years, and is the current Secretary/Treasurer.  Stuart Dziedzic, of Defendant G&R, is a member of the CSSB Board. Other cedar shake and shingle manufacturer companies on the Board of Directors include nonparty co-conspirators A&R Cedar, Inc., Best Shingle Sales Inc., and Premium Cedar Products, Ltd.

51.     Every year in August or September, the CSSB holds its Annual General Meeting, which includes a meeting of the Board of Directors. For example, on September 10-12, 2015, the CSSB held its Annual General Meeting in Whistler, British Columbia, on August 26-27, 2016, the CSSB held its Annual General Meeting in Vancouver, British Columbia, and on September 15, 2017, the CSSB held its Annual General Meeting in Vancouver, British Columbia.

52.     Every November or December, the CSSB holds a "Ladies Luncheon." For example, on December 4, 2015, the CSSB held its annual Ladies Luncheon in Pitt Meadows, British Columbia, and on November 25, 2016, the CSSB held its annual Ladies Luncheon in Maple Ridge, British Columbia.

53.     The CSSB also holds regular conference calls and in person meetings during the year. For instance, on February 17, 2016, the CSSB Board of Directors held a conference call,

which included a confidential portion to which members were not invited. On May 27, 2016, the CSSB Board of Directors met in Ocean Shores, Washington.

54.     The CSSB also holds various ad hoc events during the year attended by the Manufacturer Defendants' senior executives. For instance, on December 17, 2015, the CSSB hosted a Lifetime Achievement Awards luncheon in Bellingham, Washington.

### 6.     There Are High Barriers To Entry In The Cedar Shakes And Shingles Market

55.     There are significant barriers to entering the United States market for high-end cedar shakes and shingles. In order to effectively compete with cedar shake and shingle products, the product must be CSSB Certi-Labeled. Although non-CSSB or "non-bureau" manufacturers can produce shingles that comply with the CSSB-97 grading rules, there is a 15% or more price difference between CSSB Certi-Label cedar shakes and shingles and the same grades produced by non-bureau manufacturers. This prevents non-bureau manufacturers from being able to compete effectively for the high-cost cedar logs and cut blocks needed to make cedar shakes and shingles. A manufacturer participant in the cedar shakes and shingles market is thus required to be a member of the CSSB in order to compete.

### C.     Manufacturer Defendants Worked Through The CSSB To Fix The Price Of Cedar Shakes And Shingles And Restrict Output

56.     As consolidation in the cedar shake and shingle industry progressed, the CSSB became a key vehicle for the Manufacturer Defendants to artificially raise the price of cedar shakes and shingles. Under the auspices of the Certi-Label labeling program, which accounts for the vast majority of cedar shakes and shingles sold in the United States (see above), Defendants enacted a scheme to fix pricing and restrict supply from cedar shake and shingle manufacturers.

57.     Due to consolidation and the weighted voting structure of the CSSB, Manufacturer Defendants have obtained a concentration of power in the CSSB. Manufacturer-

Defendants increased Manufacturer Defendants' collective voting power through a series of Board actions in November 2016, November 2017, and November 2018. As a result of these actions, Manufacturer Defendants now effectively control the CSSB vote.

58.     On information and belief, no later than February 27, 2015 (further investigation and discovery may reveal an earlier date), Manufacturer Defendants and CSSB began conspiring and colluding to fix prices for cedar shakes and shingle products sold into the United States market. Manufacturer Defendants—the largest manufacturer members of the Board of Directors—continued to put pressure on other CSSB members to hold their prices at consistent levels. Manufacturer Defendants and CSSB conspired to eliminate or discipline other CSSB members who compete on price and who are unwilling to follow the price and product leadership of Manufacturer Defendants.

59.     As described by one former CSSB member, S&W Forest Products, Ltd. ("S&W"): "Throughout the four years predating the filing of this complaint, defendant Waldun's Curtis Walker and defendant Anbrook's Brooke Meeker have regularly conspired and colluded to fix prices for cedar shake and shingle products sold into the United States market and have encouraged other mill manufacturers to join in that price collusion."[4] Upon information and belief, the price collusion among the Manufacturer Defendants began at least by February 27, 2015 (further investigation and discovery may reveal an earlier date) and continues through present day.

60.     S&W was allegedly terminated from CSSB when it refused to participate in the conspiracy.[5] According to S&W, it was forced out of the CSSB during a "hastily convened

---

[4] Complaint ¶ 24, *S&W Forest Products, Ltd. v. Cedar Shake & Shingle Bureau*, Case No. 2:19-cv-00202, (W.D. Wash. Feb. 13, 2019).

[5] *Id*. at ¶¶ 27-35.

special meeting by telephone conference call" involving an unknown members of the CSSB Board of Directors.[6] S&W maintains that the reason given for termination - a mislabeling violation- is false and unsupported: "Despite these facts, several CSSB Directors who are executives with Waldun, Anbrook, and a number of other large member mills successfully secured a three-fourths vote in favor of terminating S&W's CSSB membership, not because of a mislabeling violation but in pursuit of their conspiracy to eliminate a competitor unwilling to engage in price fixing or collusion."[7]

61.    S&W specifically states that the reason it was terminated from the CSSB was because it would not participate in price fixing. "Waldun's Curtis Walker and defendant Anbrook's Brooke Meeker conspired throughout November and December 2018 to find a means of eliminating S&W as a competitor. In a meeting with Kris Watkins of Watkins Sawmills Ltd. on December 5, 2018, Curtis Walker stated that CSSB member mills should hold their prices at consistent levels. He expressed anger about S&W's willingness to compete on price for shake and shingle products. He became very agitated during his comments about S&W and stated: 'yeah, well we just need to get rid of that guy.'"[8]

62.    On information and belief, Defendants' actions had the intended purpose and effect of increasing the price of cedar shakes and shingles to Plaintiff and class members.

## VI.    CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action on behalf of itself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking injunctive relief pursuant to federal law, and damages pursuant to various state antitrust, unfair competition, unjust

---

[6] *Id*. at ¶ 26.

[7] *Id*. at ¶ 10.

[8] *Id*. at ¶ 35.

enrichment, and consumer protection laws of the states listed below on behalf of the members of the following classes:

A.  **Nationwide Injunctive Relief class**: All persons and entities who indirectly purchased Cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in the United States during the Class Period.

B.  **Alaska class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Alaska during the Class Period.

C.  **Arizona class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Arizona during the Class Period.

D.  **Arkansas class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Arkansas during the Class Period.

E.  **California class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in California during the Class Period.

F.  **Colorado class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Colorado during the Class Period.

G.  **Delaware class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Delaware during the Class Period.

H.  **District of Columbia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in the District of Columbia during the Class Period.

I.  **Florida class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Florida during the Class Period.

J.  **Georgia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Georgia during the Class Period.

K.  **Hawaii class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Hawaii during the Class Period.

L.      **Iowa class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Iowa during the Class Period.

M.      **Kansas class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Kansas during the Class Period.

N.      **Maine class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Maine during the Class Period.

O.      **Massachusetts class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Massachusetts during the Class Period.

P.      **Michigan class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Michigan during the Class Period.

Q.      **Minnesota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Minnesota during the Class Period.

R.      **Mississippi class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Mississippi during the Class Period.

S.      **Missouri class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Missouri during the Class Period.

T.      **Montana class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Montana during the Class Period.

U.      **Nebraska class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Nebraska during the Class Period.

V.      **Nevada class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Nevada during the Class Period.

W.      **New Hampshire class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in New Hampshire during the Class Period.

X.  **New Mexico class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in New Mexico during the Class Period.

Y.  **New York class**: All persons and who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in New York during the Class Period.

Z.  **North Carolina class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in North Carolina during the Class Period.

AA.  **North Dakota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in North Dakota during the Class Period.

BB.  **Oregon class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Oregon during the Class Period.

CC.  **Rhode Island class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Rhode Island during the Class Period.

DD.  **South Carolina class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in South Carolina during the Class Period.

EE.  **South Dakota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in South Dakota during the Class Period.

FF.  **Tennessee class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Tennessee during the Class Period.

GG.  **Utah class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Utah during the Class Period.

HH.  **Vermont class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Vermont during the Class Period.

II.  **Virginia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Virginia during the Class Period.

JJ.   **West Virginia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in West Virginia during the Class Period.

KK.   **Wisconsin class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for end use and not for resale in Wisconsin during the Class Period

64.     The State Classes are collectively referred to as the "Classes" unless otherwise indicated. Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from these Classes are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action. Further excluded from the Classes and National Injunctive Relief Class are purchases of value added products not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants.

65.     **Class Period:** The Class Period is presently defined as February 27, 2015 to the present. Additional discovery may reveal that the conduct alleged in this Complaint commenced at an earlier time, and Plaintiff reserves all rights to amend his complaint as appropriate.

66.     **Class Identity**: The above-defined Classes are readily identifiable and is one for which records should exist.

67.     **Numerosity**: Plaintiff do not know the exact number of class members because such information presently is in the exclusive control of Defendants, retailers, resellers and other entities in the supply chain of cedar shakes and shingles. Plaintiff believe that due to the nature of the trade and commerce involved, there are thousands of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

68.    **Typicality**: Plaintiff' claims are typical of the claims of the members of the Classes because Plaintiff purchased cedar shakes and shingles indirectly from one or more of the Defendants for end use and not for resale, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the Classes and the relief sought is common to the Classes.

69.    **Common Questions Exist And Predominate Over Any Individual Questions**: There questions of law and fact common to the Classes, including, but not limited to:

A.    Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of cedar shakes and shingles sold in interstate commerce in the United States;

B.    The identity of the participants of the alleged conspiracy;

C.    The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

D.    Whether the alleged conspiracy violated the antitrust and consumer protection laws of the various states;

E.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiff and the other members of the Classes;

F.    The effect of Defendants' alleged conspiracy on the prices of cedar shakes and shingles sold in the United States during the Class Period;

G.    Whether Plaintiff and other members of the Classes are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

H.    The appropriate class-wide measure of damages.

These and other questions of law and fact, which are common to the members of the Classes, predominate over any questions affecting only individual members of the Classes.

70.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff' interests are aligned with, and not antagonistic to, those of the other members of the Classes who indirectly purchased cedar shakes and shingles from Defendants and Plaintiff

has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent himself and the Classes.

71.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

72.     The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

73.     Plaintiff brings the Classes on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that, as residents of various states, indirectly purchased one or more cedar shakes and shingles that a defendant or co-conspirator produced for end use and not for resale during the respective Class Periods.

74.     Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

**VII.    <u>ANTITUST INJURY</u>**

75.     Defendants' anticompetitive conduct had the following effects, among others:

A.      Price competition has been restrained or eliminated with respect to cedar shakes and shingles;

B.      The prices of cedar shakes and shingles have been fixed, raised, stabilized, or maintained at artificially inflated levels;

C.      Indirect purchasers of cedar shakes and shingles have been deprived of free and open competition; and

D.      End-users purchasers of cedar shakes and shingles who indirectly purchased cedar shakes and shingles for end use and not for resale, including Plaintiff, paid artificially inflated prices.

76.     Cedar shakes and shingles are manufactured by Defendants from cedar logs and are then sold through various distribution channels.

77.     The cedar shakes and shingles that Plaintiff and Class Members purchased were in substantially the same form as when they were initially sold by Defendants. As a result, the cedar shakes and shingles follow a traceable physical chain from Defendants to the Plaintiff and class members, and the overcharges on cedar shakes and shingles can be traced from Defendants to Plaintiff and class members. In fact, the Certi-Label shown below is present on all cedar shakes and shingles sold by Manufacturer Defendants and permits the tracing of each product to the specific manufacturer.



78.    As a matter of economic principle, firms must recover the short-run variable costs of production when they price their products for the market, which ultimately get passed to consumers in the form of higher retail prices. For a firm to be a profitable valid concern, the firm must recover its marginal cost of production. In a perfectly competitive market, firms price at marginal cost and when marginal costs increase, the cost increases are passed through to the consumer 1:1 or at a 100 percent pass through rate. As a general matter, the pass through rate will be determined by the relative elasticities of supply and demand. When demand is inelastic

27

(as it likely is for cedar shakes and shingles), the pass-through rate to end users is at or near 100 percent.

79.    Consequently, while the direct purchasers were the first to pay supra-competitive prices, all or most of the overcharge was passed along the distribution chain and absorbed by Plaintiff and Class Members when they purchased the cedar shakes and shingles for end use and not for resale.

80.    Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution to end-user consumers. Thus, the economic harm to Plaintiff and the class members can be quantified.

81.    The purpose of the conspiratorial conduct of the Defendants and their con-conspirators was to raise, fix, or maintain the price of cedar shakes and shingles and, as a direct and foreseeable result. Plaintiff and the Classes paid supra-competitive prices for cedar shakes and shingles during the Class Period.

82.    By reason of the alleged violations of the antitrust laws, Plaintiff and the Classes have sustained injury to their businesses or property, having paid higher prices for cedar shakes and shingles than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages.

83.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VIII.  VIOLATION OF SECTION 1 OF THE SHERMAN ACT

### COUNT I
**(Violation of Section 1 of the Sherman Act 15 U.S.C. ¶ 1)**
**(On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**

84.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

85.     Beginning at a time currently unknown to Plaintiff, but at least as early as February 27, 2015 (further investigation and discovery may reveal an earlier date), and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for cedar shakes and shingles in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

86.     In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    A.    Fixing, raising, stabilizing, and pegging the price of cedar shakes and shingles; and

    B.    Allocating among themselves and collusively reducing the production of cedar shakes and shingles.

87.     The combination and conspiracy alleged herein has had the following effects:

    A.    Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

    B.    Prices for cedar shakes and shingles sold by Defendants and all of their Produce Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

29

C.    Those who purchased cedar shakes and shingles indirectly from Defendants and their co-conspirators for their personal use have been deprived of the benefits of free and open competition.

88.    Plaintiff and members of the Classes have been injured and will continue to be injured in their businesses and property by paying more for cedar shakes and shingles purchased indirectly from the Defendants and their co-conspirators for their personal use than they would have paid and will pay in the absence of the combination and conspiracy.

89.    Plaintiff and members of the Classes are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## IX.    VIOLATIONS OF STATE ANTITRUST LAWS

90.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

91.    The following Claims for Relief are pleaded under the antitrust laws of each State or jurisdiction identified below, on behalf of the indicated class.

**COUNT II**
**(Violation of Arizona's Uniform State Antitrust Act, Ariz. Rev. Stat. § 44-1401, et seq.)**
**(On Behalf of the Arizona Class)**

92.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

93.    By reason of the conduct alleged herein, Defendants have violated Arizona Rev. Stat. § 44-1401, et seq.

94.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Arizona.

95.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred

within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

96.     Defendants' violations of Arizona law were flagrant.

97.     Defendants' unlawful conduct substantially affected Arizona's trade and commerce.

98.     As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Arizona Class have been injured in their business or property and are threatened with further injury.

99.     By reason of the foregoing, Plaintiff and members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Statute § 44-1401, et seq.

### COUNT III
**(Violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, et seq.)**
**(On Behalf of the California Class)**

100.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

101.    The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

102.    California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

103.    Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Cal. Bus. & Prof. Code § 16750(a).

104.    A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. *Id.* at § 16726.

105.    Members of the California Class purchased cedar shakes and shingles within the State of California during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

106.    Defendants enacted a combination of capital, skill or acts for the purpose of creating and carrying out restrictions in trade or commerce, in violation of Cal. Bus. & Prof. Code § 16700, et seq.

107.    Plaintiff and members of the Class were injured in their business or property, with respect to purchases of cedar shakes and shingles in California and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

## <u>COUNT IV</u>
**(Violation of The District of Columbia Antitrust Act, D.C. Code § 18-4501, et seq.)**
**(On Behalf of The District of Columbia Class)**

108.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

109.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

110.    Members of The District of Columbia Class purchased cedar shakes and shingles within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

111.    Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the D.C. Code based on the facts alleged in this Complaint, because "any indirect purchaser in the chain of manufacture, production or distribution of goods...shall be deemed to be injured within the meaning of this chapter." D.C. Code § 28-4509(a).

112.    Defendants contracted, combined or conspired to act in restraint of trade within the District of Columbia, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the District of Columbia, in violation of D.C. Code § 28-4501, *et seq.*

113.    Plaintiff and Members of the Class were injured with respect to purchases of cedar shakes and shingles in the District of Columbia and are entitled to all forms of relief, including actual damages, treble damages, and interest, reasonable attorneys' fees and costs.

### COUNT V
**(Violation of Iowa's Competition Law, Iowa Code § 553.1, et seq.)**
**(On Behalf of the Iowa Class)**

114.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

115.    The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

116.    Members of the Iowa Class purchased cedar shakes and shingles within the State of Iowa during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

33

117.    Defendants contracted, combined or conspired to restrain or monopolize trade in the market for cedar shakes and shingles, and attempted to establish or did in fact establish a monopoly for the purpose of excluding competition or controlling, fixing or maintaining prices for cedar shakes and shingles, in violation of Iowa Code § 553.1, et seq.

118.    Plaintiff and members of the Iowa Class were injured with respect to purchases of cedar shakes and shingles in Iowa, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

## <u>COUNT VI</u>
### (Violation of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-101, et seq.)
### (On Behalf of the Kansas Class)

119.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

120.    The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

121.    Members of the Kansas Class purchased cedar shakes and shingles within the State of Kansas during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

122.    Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

123.    Defendants combined capital, skill or acts for the purposes of creating restrictions in trade or commerce of cedar shakes and shingles, increasing the price of cedar shakes and shingles, preventing competition in the sale of cedar shakes and shingles, or binding themselves

34

not to sell cedar shakes and shingles, in a manner that established the price of cedar shakes and shingles and precluded free and unrestricted competition among themselves in the sale of cedar shakes and shingles, in violation of Kan. Stat. Ann. § 50-101, et seq.

124.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

### COUNT VI
**(Violation of Maine's Antitrust Statute, Me. Rev. Stat. Ann. Tit. 10 § 1101, et seq.)**
**(On Behalf of the Maine Class)**

125.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

126.    Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

127.    Members of the Maine Class purchased cedar shakes and shingles within the State of Maine during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

128.    Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

129.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of Maine, and monopolized or attempted to monopolize the trade or commerce of cedar shakes and shingles within the intrastate commerce of Maine, in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101, et seq.

130.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Maine and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' and experts' fees and costs.

## COUNT VII
**(Violation of Michigan's Antitrust Reform Act, Mich. Comp. Law § 445.771, et seq.)**
**(On Behalf of the Maine Class)**

131.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

132.    The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce...to prohibit monopolies and attempts to monopolize trade or commerce...[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

133.    Members of the Michigan Class purchased cedar shakes and shingles within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

134.    Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

135.    Defendants contracted, combined or conspired to restrain or monopolize trade or commerce in the market for cedar shakes and shingles, in violation of Mich. Comp. Laws § 445.772, et seq.

136.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Michigan and are entitled to all forms of relief, including actual damages,

treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

**COUNT IX**
**(Violation of Minnesota's Antitrust Law, Minn. Stat. § 325D.49, et seq.)**
**(On Behalf of the Minnesota Class)**

137.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

138.    The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

139.    Members of the Minnesota Class purchased cedar shakes and shingles within the State of Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

140.    Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

141.    Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the market for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; established, maintained, used or attempted to establish, maintain or use monopoly power over the trade or commerce in the market for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. § 325D.*49, et seq.*

37

142.     Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Minnesota and are entitled to all forms of relief, including actual damages, treble damages, costs and disbursements, reasonable attorneys' fees, and injunctive relief necessary to prevent and restrain violations hereof.

### COUNT X
### (Violation of Mississippi's Antitrust Statute, Miss. Code Ann. § 74-21-1, et seq.)
### (On Behalf of the Mississippi Class)

143.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

144.     Title 75 of the Mississippi Code regulates trade, commerce and investments. Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with the aim that "trusts and combines may be suppressed, and the benefits arising from competition in business [are] preserved" to Mississippians. Miss. Code Ann. § 75-21-39.

145.     Trusts are combinations, contracts, understandings or agreements, express or implied, when inimical to the public welfare and with the effect of, inter alia, restraining trade, increasing the price or output of a commodity, or hindering competition in the production or sale of a commodity. Miss. Code Ann. § 75-21-1.

146.     Members of the Mississippi Class purchased cedar shakes and shingles within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

147.     Under Mississippi law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Mississippi Code based on the facts alleged in this Complaint. Miss. Code Ann. § 75-21-9.

148.    Defendants combined, contracted, understood and agreed in the market for cedar shakes and shingles, in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of cedar shakes and shingles and hindering competition in the sale of cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-1(a), et seq.

149.    Defendants monopolized or attempted to monopolize the production, control or sale of cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-3, et seq.

150.    Defendants' cedar shakes and shingles are sold indirectly via distributors throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

151.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

## COUNT XI
### (Violation of Missouri's Merchandising Practice Act, Mo. Ann. Stat. § 407.010, et seq.)
### (On Behalf of the Missouri Class)

152.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

153.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

154.    Members of the Missouri Class purchased cedar shakes and shingles within the State of Missouri during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

39

155.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint.

156.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Mo. Ann. Stat. § 407.010, et seq.

157.    Plaintiff and members of the Missouri Class were injured with respect to purchases of cedar shakes and shingles in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

## COUNT XII
### (Violation of Nebraska's Junkin Act, Neb. Rev. Stat. § 59-801, et seq.)
### (On Behalf of the Nebraska Class)

158.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

159.    Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

160.    Members of the Nebraska Class purchased cedar shakes and shingles within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

161.    Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

162.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of Nebraska, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the intrastate commerce of Nebraska by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Neb. Rev. Stat. § 59-801, et seq.

163.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Nebraska and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

## COUNT XIII
**(Violation of Nevada's Unfair Trade Practices Act, Nev. Rev. Stat. § 598A.010, et seq.)**
**(On Behalf of the Nevada Class)**

164.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

165.    The Nevada Unfair Trade Practice Act ("NUPTA") states that "free, open and competitive production and sale of commodities...is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

166.    The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include, inter alia,

price fixing, division of markets, allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060.

167.    Members of the Nevada Class purchased cedar shakes and shingles within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

168.    Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. §598A.210(2).

169.    Defendants fixed prices by agreeing to establish prices for cedar shakes and shingles in Nevada, divided Nevada markets, allocated Nevada customers, and monopolized or attempted monopolize trade or commerce of cedar shakes and shingles within the intrastate commerce of Nevada, constituting a contract, combination or conspiracy in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A, et seq.

170.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Nevada in that at least thousands of sales of Defendants' cedar shakes and shingles took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

171.    Accordingly, Plaintiff and members of the Nevada Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

172.    In accordance with the requirements of § 598A.210(3), notice of this action was mailed to the Nevada Attorney General by Plaintiff.

## COUNT XIV

**(Violation of New Hampshire's Antitrust Statute, N.H. Rev. Stat. Ann. Tit. XXXI, § 356, et seq.)**
**(On Behalf of the New Hampshire Class)**

173.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

174.    Title XXXI of the New Hampshire Statutes generally governs trade and commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

175.    Members of the New Hampshire Class purchased cedar shakes and shingles within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

176.    Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

177.    Defendants fixed, controlled or maintained prices for cedar shakes and shingles, allocated customers or markets for cedar shakes and shingles, and established, maintained or used monopoly power, or attempted to, constituting a contract, combination or conspiracy in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, et seq.

178.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in New Hampshire and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, costs, and injunctive relief.

## COUNT XV
### (Violation of New Mexico's Antitrust Act, N.M. Stat. Ann. §§ 57-1-1, et seq.)
### (On Behalf of the New Mexico Class)

179.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

180.    The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. 57-1-15.

181.    Members of the New Mexico Class purchased cedar shakes and shingles within the State of New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

182.    Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

183.    Defendants contracted, agreed, combined or conspired, and monopolized or attempted to monopolize trade for cedar shakes and shingles within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. § 57-1-1, et seq.

184.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

## COUNT XVI
### (Violation of Section 340 of the New York General Business Law)
### (On Behalf of the New York Class)

185.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

186.    Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or

the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

187.    Plaintiff purchased cedar shakes and shingles within the State of New York during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

188.    Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

189.    Defendants established or maintained a monopoly within the intrastate commerce of New York for the trade or commerce of cedar shakes and shingles and restrained competition in the free exercise of the conduct of the business of cedar shakes and shingles within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et seq.*

190.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in New York and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees.

## COUNT XVII
### (Violation of the North Carolina General Statutes, N.C. Gen. Stat. § 75-1, et. seq.)
### (On Behalf of the North Carolina Class)

191.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

192.    Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within North Carolina.

193.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of

affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

194.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

195.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

196.    By reason of the foregoing, Plaintiff and members of the North Carolina Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, et seq.

## COUNT XVIII
**(Violation of the North Dakota Uniform State Antitrust Act, N.D. Cent. Code § 51-08.1, et. seq.)**
**(On Behalf of the North Dakota Class)**

197.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

198.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code § 51-08.1, et seq.

199.    Members of the North Dakota Class purchased cedar shakes and shingles within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

200.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

201.    Defendants contracted, combined or conspired in restraint of, or to monopolize trade or commerce in the market for cedar shakes and shingles, and established, maintained, or used a monopoly, or attempted to do so, for the purposes of excluding competition or controlling, fixing or maintaining prices for cedar shakes and shingles, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

202.    Plaintiff and members of the Class were injured with respect to purchases in North Dakota and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief.

## COUNT XVIX
### (Violation of the Oregon Antitrust Law, Or. Rev. Stat. § 646.705, et. seq.)
### (On Behalf of the Oregon Class)

203.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

204.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

205.    Members of the Oregon Class purchased cedar shakes and shingles within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

206.    Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

207.    Defendants contracted, combined, or conspired in restraint of trade or commerce of cedar shakes and shingles, and monopolized or attempted to monopolize the trade or commerce of cedar shakes and shingles, in violation of Or. Rev. Stat. § 646.705, et seq.

208.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, expert witness fees and investigative costs, and injunctive relief.

**COUNT XX**
**(Violation of the Rhode Island Antitrust Act, R.I. Gen. Laws § 6-36-1, et. seq.)**
**(On Behalf of the Rhode Island Class)**

209.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

210.    The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent or decrease competition. R.I. Gen. Laws § 6¬36-2(a)(2).

211.    Members of the Rhode Island Class purchased cedar shakes and shingles within the State of Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

212.    Under the Rhode Island Antitrust Act, no later than February 27, 2015 (further investigation and discovery may reveal an earlier date), indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a). In Rhode Island, the claims of the Plaintiff and the Class alleged herein run no later than February

27, 2015 (further investigation and discovery may reveal an earlier date) through the date that the effects of Defendants' anticompetitive conduct cease.

213.   Defendants contracted, combined and conspired in restraint of trade of cedar shakes and shingles within the intrastate commerce of Rhode Island, and established, maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of cedar shakes and shingles for the purpose of excluding competition or controlling, fixing or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws § 6-36-1, et seq.

214.   Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Rhode Island and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

<u>**COUNT XXI**</u>
**(Violation of the South Dakota Antitrust Act, S.D. Codified Laws, § 37-1-3-1, et. seq.)**
**(On Behalf of the South Dakota Class)**

215.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

216.   Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies and discriminatory trade practices. S.D. Codified Laws §§ 37-1- 3.1, 3.2.

217.   Members of the South Dakota Class purchased cedar shakes and shingles within the State of South Dakota during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

218.   Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

219.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of cedar shakes and shingles within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws § 37-1, et seq.

220.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorneys' fees, and injunctive or other equitable relief.

## COUNT XXII
**(Violation of the Tennessee Trade Practices Act, Tenn. Code, § 47-25-101, et. seq.)**
**(On Behalf of the Tennessee Class)**

221.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

222.    The Tennessee Trade Practices Act generally governs commerce and trade in Tennessee, and it prohibits, inter alia, all arrangements, contracts, agreements, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in goods in Tennessee. All such arrangements, contracts, agreements, or combinations between persons or corporations designed, or which tend, to increase the prices of any such goods, are against public policy, unlawful, and void. Tenn. Code, § 47-25-101.

223.    237. Defendants competed unfairly and colluded by meeting to fix prices, divide markets, and otherwise restrain trade as set forth herein, in violation of Tenn. Code, § 47-25-101, et seq.

224.    Defendant's conduct violated the Tennessee Trade Practice Act because it was an arrangement, contract, agreement, or combination to lessen full and free competition in goods in

Tennessee, and because it tended to increase the prices of goods in Tennessee. Specifically, Defendants' combination or conspiracy had the following effects: (1) price competition for cedar shakes and shingles was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for cedar shakes and shingles were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and the Tennessee Class were deprived of free and open competition; and (4) Plaintiff and the Tennessee Class paid supra-competitive, artificially inflated prices for cedar shakes and shingles.

225. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as cedar shakes and shingles were sold in Tennessee.

226. Members of the Tennessee Class purchased cedar shakes and shingles within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower,

227. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Tennessee Class have been injured in their business and property and are threatened with further injury.

228. Under Tennessee law, indirect purchasers (such as Plaintiff and the Tennessee Class) have standing under the Tennessee Trade Practice Acts to maintain an action based on the facts alleged in this Complaint.

229. Plaintiff and members of the Tennessee Class were injured with respect to purchases of cedar shakes and shingles in Tennessee and are entitled to all forms of relief available under the law, including return of the unlawful overcharges that they paid on their purchases, damages, equitable relief, and reasonable attorneys' fees.

## COUNT XXIII
### (Violation of the Utah Antitrust Act, Utah Code Ann. §§ 76-10-911, et. seq.)
### (On Behalf of the Utah Class)

230.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

231.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

232.    Members of the Utah Class purchased cedar shakes and shingles within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

233.    Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

234.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles, and monopolized or attempted to monopolize trade or commerce of cedar shakes and shingles, in violation of Utah Code Ann. § 76-10-3101, et seq.

235.    Plaintiff and members of the Class who are either Utah residents or Utah citizens were injured with respect to purchases of cedar shakes and shingles in Utah and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorneys' fees, and injunctive relief.

## COUNT XXIV
**(Violation of Vermont Stat. Ann. §§ 2453 et seq.)**
**(On Behalf of the Vermont Class)**

236.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

237.    By reason of the conduct alleged herein, Defendant has violated the Vermont Statutes Annotated.

238.    Members of the Vermont Class purchased cedar shakes and shingles within the State of Vermont during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

239.    Defendant coerced wholesalers into accepting Defendants' cedar shakes and shingles.

240.    Defendants have and will have sufficient economic power in the cedar shakes and shingles market to coerce wholesalers' acceptance of Defendants' cedar shakes and shingles.

241.    Defendants' conduct has and had anticompetitive effects in the cedar shakes and shingles market, as supracompetitive prices for cedar shakes and shingles are passed on to end users.

242.    Defendants' unlawful conduct substantially affected Vermont's trade and commerce.

243.    As a direct and proximate result of Defendants' unlawful conduct, members of the Vermont Class have been injured in their business or property and are threatened with further injury in that they paid and will continue to pay more for cedar shakes and shingles than they otherwise would in the absence of Defendants' unlawful conduct.

244.    By reason of the foregoing, Plaintiff and members of the Vermont Class are entitled to seek all forms of relief available under Vermont Stat. Ann. 9 § 2453 et seq.

## COUNT XXV
### (Violation of the West Virginia Antitrust Act, W. Va. Code §47-18-1, et. seq.)
### (On Behalf of the West Virginia Class)

245.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

246.    The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

247.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of W. Va. Code § 47-18-1, et seq.

248.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the West Virginia Antitrust Act.

249.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the West Virginia Class have been injured in their business and property in that they paid more for cedar shakes and shingles than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust Act, Plaintiff and members of the West Virginia Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 47-18-9 of the West Virginia Code.

## COUNT XXVI
### (Violation of the Wisconsin Antitrust Act, Wis. Stat. Ann. § 133.01(1), et. seq.)
### (On Behalf of the Wisconsin Class)

250.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

251.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

252.    Members of the Wisconsin Class purchased cedar shakes and shingles within the State of Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

253.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

254.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. § 133.01, et seq.

255.    Plaintiff and members of the Class were injured with respect to purchases of cedar shakes and shingles in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with at least thousands of consumers in Wisconsin paying substantially higher prices for Defendants' cedar shakes and shingles in Wisconsin.

256.    Accordingly, Plaintiff and members of the Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorneys' fees, and injunctive relief.

257.    Defendants' and their co-conspirators' anticompetitive activities have directly, foreseeably and proximately caused injury to Plaintiff and members of the Classes in the United States. Their injuries consist of: (1) being denied the opportunity to purchase lower-priced cedar shakes and shingles from Defendants, and (2) paying higher prices for Defendants' cedar shakes and shingles than they would have in the absence of Defendants' conduct. These injuries are of the type of the laws of the above States were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

258.    Defendants are jointly and severally liable for all damages suffered by Plaintiff and members of the Classes.

## X.    VIOLATIONS OF STATE CONSUMER PROTECTION LAWS

259.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

260.    The following Claims for Relief are pleaded under the consumer protection or similar laws of each State or jurisdiction identified below, on behalf of the indicated class.

### COUNT XXVII
**(Violation of the Alaska Statute §45.50.471, et. seq.)**
**(On Behalf of the Alaska Class)**

261.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

262.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, et seq.

263.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiff and members of the Class.

264.    The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law.

265.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Alaska; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska; (3) Plaintiff and members of the Class were deprived of free and open competition; and (4) Plaintiff and members of the Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

266.    During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and consumers.

267.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured and are threatened with further injury.

268.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, et seq., and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

### <u>COUNT XXIII</u>
**(Violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, et. seq.)**
**(On Behalf of the Colorado Class)**

269.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

270.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, et seq.

271.    Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiff as actual or potential consumers of the Defendants' goods and which caused Plaintiff to suffer injury.

272.    Defendants took efforts to conceal their agreements from Plaintiff. Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Colorado; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) Plaintiff and members of the Class were deprived of free and open competition; and (4) Plaintiff and members of the Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

273.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

274.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured and are threatened with further injury.

275.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6-1-101, et seq., and, accordingly, Plaintiff and members of the Class seek all relief available under that statute and as equity demands.

**COUNT XXIX**
**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et. seq.**
**(The "UCL"))**
**(On Behalf of the California Class)**

276. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

277. The violations of federal antitrust law set forth above also constitute violations of section 17200, et seq. of California Business and Professions Code.

278. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

279. This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

280. The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

281. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

282.    Plaintiff and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

283.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

284.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the California Class to pay supra-competitive and artificially-inflated prices for cedar shakes and shingles sold in the State of California. Plaintiff and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

285.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

### COUNT XXX
**(Violation of Delaware Consumer Fraud Act, 6 Del. Code § 2511, et. seq.)**
**(On Behalf of the Delaware Class)**

286.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

287.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Delaware Consumer Fraud Act, 6 Del. Code § 2511, et seq. Defendants agreed to, and did in fact, act in restraint of trade or commerce in

60

Delaware, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Delaware.

288. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for cedar shakes and shingles.

289. Defendants misrepresented to all purchasers during the Class Period that Defendants' cedar shakes and shingles prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Delaware; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) Plaintiff and members of the Class were deprived of free and open competition; and (4) Plaintiff and members of the Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

290. During the Class Period, Defendants' illegal conduct had a substantial effect on Delaware commerce and consumers.

291. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

292. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of cedar shakes and shingles, likely misled all purchasers acting

reasonably under the circumstances to believe that they were purchasing cedar shakes and shingles at prices set by a free and fair market.

293.    Defendants' misleading conduct and unconscionable activities constitute violations of 6 Del. Code § 2511, *et seq.*, and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## COUNT XXXI
### (Violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, et. seq.)
### (On Behalf of the District of Columbia Class)

294.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

295.    Plaintiff and members of the District of Columbia Class purchased cedar shakes and shingles for personal, family, or household purposes.

296.    By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-3901, et seq.

297.    Defendants are "merchants" within the meaning of D.C. Code § 28- 3901(a)(3).

298.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within the District of Columbia.

299.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant markets, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

300.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the District of Columbia.

301.    Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

302.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

303.    By reason of the foregoing, Plaintiff and members of the District of Columbia Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, et seq.

**COUNT XXXII**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(2), et. seq.)**
**(On Behalf of the Florida Class)**

304.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

305.    The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, et seq. (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

306.    The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

307.    A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

308.    Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("anyone aggrieved by a violation of this [statute] may bring an action . . .").

309.    Members of the Florida Class purchases cedar shakes and shingles within the State of Florida during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

310.    Defendants entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Florida.

311.    Defendants established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for cedar shakes and shingles, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level, beginning at least as early as 2008 and continuing through the date of this filing.

312.    Accordingly, Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

313.    Defendants' unlawful conduct substantially affected Florida's trade and commerce.

314.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the Florida Class have been injured in their business or property by virtue of overcharges for cedar shakes and shingles and are threatened with further injury.

315.    By reason of the foregoing, Plaintiff and the members of the Florida Class is entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208

and declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to Florida Stat. § 501.211.

## COUNT XXXIII
**(Violation of the Hawaii Revised Statutes Annotated §§ 480-1, et. seq.)**
**(On Behalf of the Hawaii Class)**

316.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

317.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et seq.

318.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) cedar shakes and shingles prices were, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Hawaii Class were deprived of free and open competition; and (4) Plaintiff and members of the Hawaii Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

319.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

320.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

## COUNT XXXIV
**(Violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A § 1, et. seq.)**
**(On Behalf of the Massachusetts Class)**

321.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

322.    By reason of the conduct alleged herein, Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A § 2, et seq.

323.    Massachusetts Class members purchased cedar shakes and shingles within the State of Massachusetts during the Class Period. But for Defendants' conduct set forth herein, the price per pound of cedar shakes and shingles would have been lower.

324.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Massachusetts.

325.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for cedar shakes and shingles, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

326.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Massachusetts.

327.    Defendants' unlawful conduct substantially affected Massachusetts' trade and commerce.

328.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Massachusetts Class have been injured in their business or property and are threatened with further injury.

329.    By reason of the foregoing, the Plaintiff and the Massachusetts Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Mass. Gen. Laws Ch. 93A § 9.

330.    Pursuant to Mass. Gen. Laws Ch. 93A § 9, Plaintiff in the Indirect Purchaser Plaintiff' Second Amended Complaint alleged they mailed to all Defendants on October 5, 2016or October 6, 2015, via certified mail, return receipt requested, Demand for Payment Letters which explained the unfair acts, the injury suffered, and requested relief from the Defendants. They alleged that they received a response to these letters from certain Defendants, each of which declined to make a settlement offer. They allege that the parties were unable to come to any agreement. They further allege that they have received no response from other Defendants.

### COUNT XXXV
**(Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et. seq.)**
**(On Behalf of the Michigan Class)**

331.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

332.    By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, et seq.

333.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Michigan.

334.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

335.    Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

336.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

337.    Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiff and members-of-the-Classes' inability to protect themselves.

338.    Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

339.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Michigan Class have been injured in their business or property and are threatened with further injury.

340.    By reason of the foregoing, the Plaintiff and the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.911.

## COUNT XXXVI
**(Violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, et. seq.)**
**(On Behalf of the Minnesota Class)**

341.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

342.    By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, et seq.

343.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

344.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Minnesota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

68

345.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Minnesota.

346.    Defendants' conduct, specifically in the form of fraudulent concealment of their horizontal agreement, created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

347.    Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

348.    Defendants' conduct was willful.

349.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Minnesota Class have been injured in their business or property and are threatened with further injury.

350.    By reason of the foregoing, the Plaintiff and the members of the Minnesota Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs under Minn. Stat. § 325F.68, *et seq.* and applicable case law.

## COUNT XXXVII
**(Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code §§ 30-14-103, et. seq., and §§ 30-14-201, et. seq.)**
**(On Behalf of the Montana Class)**

351.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

352.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, et seq., and §§ 30-14-201, et. seq.

353.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Montana; (2)

cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Montana Class were deprived of free and open competition; and (4) Plaintiff and members of the Montana Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

354.    During the Class Period, defendants' illegal conduct substantially affected Montana commerce and consumers.

355.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, et seq., and §§ 30-14-201, et seq., and, accordingly, Plaintiff and members of the Montana Class seek all relief available under that statute.

## COUNT XXXVIII
**(Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et. seq.)**
**(On Behalf of the Nebraska Class)**

356.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

357.    By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1602, et seq.

358.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Nebraska.

359.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of

excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

360.    Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

361.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

362.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and members-of-the-Classes' ability to protect themselves.

363.    Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

364.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Nebraska Class have been injured in their business or property and are threatened with further injury.

365.    By reason of the foregoing, Plaintiff and members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59-1614.

## <u>COUNT XXXIX</u>
**(Violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, et. seq.)**
**(On Behalf of the Nevada Class)**

366.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

367.    By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, et seq.

368.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

369. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

370. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

371. Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

372. Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

373. Defendants' conduct was willful.

374. As a direct and proximate cause of Defendants' unlawful conduct, the members of the Nevada Class have been injured in their business or property and are threatened with further injury.

375. By reason of the foregoing, the Nevada Class is entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs, and a civil penalty of up to $5,000 per violation under Nev. Rev. Stat. § 598.0993.

## COUNT XL
### (Violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Tit. XXXI, § 358-A, et. seq.)
### (On Behalf of the New Hampshire Class)

376. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

377. By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, et seq.

378.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within New Hampshire.

379.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

380.    Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

381.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

382.    Defendants' conduct was willful and knowing.

383.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and members-of-the-Classes' ability to protect themselves.

384.    Defendants' unlawful conduct substantially affected New Hampshire's trade and commerce.

385.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Hampshire Class have been injured in their business or property and are threatened with further injury.

386.    By reason of the foregoing, the Plaintiff and the members of the New Hampshire Class are entitled to seek all forms of relief available under N.H. Rev. Stat. Ann. tit. XXXI, §§ A:10 and 358-A:10-a.

<u>**COUNT XLI**</u>
**(Violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-3, et. seq.)**
**(On Behalf of the New Mexico Class)**

387.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

388.    By reason of the conduct alleged herein, Defendants have violated N.M. Stat. Ann. §§ 57-12-3, et seq.

389.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within New Mexico.

390.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

391.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of New Mexico.

392.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

393.    Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

394.    Defendants' conduct constituted "unconscionable trade practices" in that such conduct, inter alia, resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for cedar shakes and shingles as set forth in N.M. Stat. Ann. § 57-12-2E.

395.    Defendants' conduct was willful.

396.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Mexico Class have been injured in their business or property and are threatened with further injury.

397.    By reason of the foregoing, Plaintiff and members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

**COUNT XLII**
**(Violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, et. seq.)**
**(On Behalf of the North Carolina Class)**

398.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

399.    By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, et seq.

400.    Defendants entered into a contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within North Carolina.

401.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

402.    Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

403.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

75

404.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

405.    Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

406.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

407.    By reason of the foregoing, the Plaintiff and the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

**COUNT XLIII**
**(Violation of the North Dakota Unfair Trade Practices Law, N.D. Cent. Code § 51-10, et. seq.)**
**(On Behalf of the North Dakota Class)**

408.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

409.    By reason of the conduct alleged herein, Defendants have violated N.D. Cent. Code § 51-10-01, et seq.

410.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

411.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of

which occurred within North Dakota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

412.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Dakota.

413.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

414.    Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

415.    Defendants' conduct was willful.

416.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Dakota Class have been injured in their business or property and are threatened with further injury.

417.    By reason of the foregoing, the Plaintiff and the members of the North Dakota Class are entitled to seek all forms of relief, including damages and injunctive relief under N.D. Cent. Code § 51-10-06.

## COUNT XLIV
### (Violation of the Oregon Unlawful Trade Practice Act, Or. Rev. Stat. § 646.605, et. seq.)
### (On Behalf of the Oregon Class)

418.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

419.    By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.608, et seq.

420.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Oregon.

421.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Oregon.

422.    Defendants' conduct was conducted with the intent to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

423.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

424.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff' and members-of-the-Classes' ability to protect themselves.

425.    Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

426.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Oregon Class have been injured in their business or property and are threatened with further injury.

427.    By reason of the foregoing, the Plaintiff and the members of the Oregon Class are entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

428.    Pursuant to section 646.638 of the Oregon Unlawful Trade Practices Act, with the filing of this action, a copy of this Complaint is being served upon the Attorney General of Oregon.

## COUNT XLV
### (Violation of the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, et. seq.)
### (On Behalf of the Rhode Island Class)

429.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

430.    By reason of the conduct alleged herein, Defendants have violated R.I. Gen Laws § 6-13.1-1, et seq.

431.    Defendants engaged in an unfair or deceptive act or practice with the intent to injure competitors and consumers through supra-competitive profits.

432.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Rhode Island, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

433.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Rhode Island.

434.    Defendants' conduct amounted to an unfair or deceptive act or practice committed by a supplier in connection with a consumer transaction.

435.    Defendants' unlawful conduct substantially affected Rhode Island's trade and commerce.

436.    Defendants' conduct was willful.

437.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Rhode Island Class concerning Defendants' unlawful activities, including the horizontal conspiracy and artificially-inflated prices for cedar shakes and shingles.

438.    Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of cedar shakes and shingles, constitutes information necessary to Plaintiff and members of the Rhode Island Class relating to the cost of cedar shakes and shingles purchased.

439.    Members of the Rhode Island Class purchased goods, namely cedar shakes and shingles, primarily for personal, family, or household purposes.

440.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Rhode Island Class have been injured in their business or property and are threatened with further injury.

441.    By reason of the foregoing, Plaintiff and the members of the Rhode Island Class are entitled to seek all forms of relief, including actual damages or $200 per violation, whichever is greater, and injunctive relief and punitive damages under R.I. Gen Laws § 6-13.1-5.2.

## COUNT XLVI
**(Violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et. seq.)**
**(On Behalf of the South Carolina Class)**

442.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

443.    By reason of the conduct alleged herein, Defendants have violated S.C. Code Ann. §§ 39-5-10.

444.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Oregon.

445.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of

excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within South Carolina.

446.    Defendants' conduct was conducted with the intent to deceive South Carolina consumers regarding the nature of Defendants' actions within the stream of South Carolina commerce.

447.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of South Carolina.

448.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff' and members-of-the-Classes' ability to protect themselves.

449.    Defendants' unlawful conduct substantially affected South Carolina trade and commerce.

450.    Defendants' unlawful conduct substantially harmed the public interest of the State of South Carolina, as numerous citizens purchase cedar shakes and shingles for their homes and businesses.

### COUNT XLVII
**(Violation of the South Dakota Deceptive Trade Practice and Consumer Protection Law, S.D. Codified Laws § 37-24 , et. seq.)**
**(On Behalf of the South Dakota Class)**

451.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

452.    By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

453.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

454.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

455.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of South Dakota.

456.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

457.    Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

458.    Defendants' conduct was willful.

459.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the South Dakota Class have been injured in their business or property and are threatened with further injury.

460.    By reason of the foregoing, Plaintiff and the members of the South Dakota Class are entitled to seek all forms of relief, including actual damages and injunctive relief under S.D. Codified Laws § 37-24-31.

## COUNT XLVIII
### (Violation of the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et. seq.)
### (On Behalf of the Utah Class)

461.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

462.    By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-11-1, et seq.

463.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Utah.

464.    Defendants are suppliers within the meaning of Utah Code Ann. §§ 13-11-3.

465.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

466.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

467.    Defendants' conduct and/or practices were unconscionable and were undertaken in connection with consumer transactions.

468.    Defendants knew or had reason to know that their conduct was unconscionable.

469.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

470.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

471.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

472.    By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to Utah Code Ann. §§ 13-11-19(5) and 13-11-20.

## COUNT XLVIX
### (Violation of the Utah Unfair Practices Act, Utah Code All. §§ 13-5-1, et. seq.)
### (On Behalf of the Utah Class)

473.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

474.    By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, et seq.

475.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Utah.

476.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

477.    Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Utah.

478.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

479.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

480.    By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including actual damages or $2000 per Utah Class member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. §§ 13-5-14, et seq.

## COUNT L
**(Violation of the Virginia Consumer Protection Act of 1977, VA Code § 59.1-196, et. seq.)**
**(On Behalf of the Virginia Class)**

481.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

482.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196, *et seq.*

483.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196, et seq.

484.    Members of the Class purchased and/or reimbursed for cedar shakes and shingles to be used for personal, family, or household purposes.

485.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Virginia.

486.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for cedar shakes and shingles. Defendants misrepresented to all purchasers during the Class Period that Defendants' cedar shakes and shingles prices were competitive and fair.

487.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Virginia; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) Plaintiff and members of the Class were deprived of free and

open competition; and (4) Members of the Virginia Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

488.    Defendants' illegal conduct substantially affected Virginia commerce and consumers.

489.    As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.

490.    That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of cedar shakes and shingles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing cedar shakes and shingles at prices set by a free and fair market.

491.    Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Class as they related to the cost of cedar shakes and shingles they purchased.

492.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*, and, accordingly, Plaintiff and members of the Class seek all relief available under that statute.

## XI.    CLAIM FOR UNJUST ENRICHMENT

### COUNT LI
### Unjust Enrichment

493.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

494.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits of cedar shakes and shingles.

495.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiff and members of the Classes in the following states: Arizona, California, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

## REQUEST FOR RELIEF

496.    WHEREFORE, Plaintiff, on behalf of itself and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

497.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

498.    The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act and listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

499.    Plaintiff and the Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgment in favor of Plaintiff and the members

of the Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

500.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

501.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

502.    Plaintiff and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

503.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

504.    Plaintiff and the members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY TRIAL DEMANDED

505.    Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of

Civil Procedure, of all issues so triable.


Dated: March 6, 2019

**WOLF HALDENSTEIN**
**ADLER FREEMAN & HERZ LLP**

 s/ *Fred T. Isquith*
Fred T. Isquith
Thomas H. Burt
Randall S. Newman
Veronica M. Bosco
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-686-0114
isquith@whafh.com
burt@whafh.com
newman@whafh.com
bosco@whafh.com